KNO/JFZ: USAO 2017R00001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. RWT17cr64 |
| | * | |
| MICHELLE SYLETHIA JORDAN, | * | (Conspiracy to Commit Mail and |
| a/k/a "Michelle Harris," | * | Wire Fraud, 18 U.S.C. § 1349; |
| a/k/a "Michelle Welsh," | * | Mail Fraud, 18 U.S.C. § 1341; |
| MICHAEL PAUL ANTHONY WELSH, | * | Wire Fraud, 18 U.S.C. § 1343; |
| a/k/a "Michael A. Welsh," | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C); |
| a/k/a "Michael Paul S. Welsh," and | * | 21 U.S.C. § 853, and 28 U.S.C. |
| CARROL ANTONIO JACKSON, | * | § 2461(c)) |
| a/k/a "Jack Jackson," | * | |
| | * | |
| Defendants | * | |
| | * | |

*******

### INDICTMENT

### COUNT ONE
(Conspiracy to Commit Mail and Wire Fraud)

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Indictment:

1. MJ Loan Auditor Group, LLC (which changed its name to M&M Educational Self Help Institute LLC on February 8, 2016) ("MJLAG") was a limited liability company registered and doing business in Maryland.

2. CJ Maxx Group LLC ("CJ Maxx") was a limited liability company doing business in Maryland, Virginia, and Georgia.

3. **MICHELLE SYLETHIA JORDAN**, also known as "Michelle Welsh" and "Michelle Harris" ("**JORDAN**"), was a resident of Laurel, Maryland, and chief executive officer and director of MJLAG.

4. **MICHAEL PAUL ANTHONY WELSH**, also known as "Michael A. Welsh" and "Michael Paul S. Welsh" ("**WELSH**"), was a resident of Laurel, Maryland, and president, vice president, and director of MJLAG.

5. **JORDAN** and **WELSH** were husband and wife.

6. **CARROL ANTONIO JACKSON**, also known as "Jack Jackson" ("**JACKSON**"), was a resident of Georgia, and the owner and manager of CJ Maxx.

7. Individuals 1 through 6 were residents of Maryland and Virginia who paid money to MJLAG with the expectation of receiving assistance with modifying their mortgage loans and preventing foreclosure of their homes.

## The Conspiracy

8. Between in or about August 2012 and in or about February 2017, in the District of Maryland and elsewhere, the defendants,

**MICHELLE SYLETHIA JORDAN,**
a/k/a "Michelle Harris,"
a/k/a "Michelle Welsh,"
**MICHAEL PAUL ANTHONY WELSH,**
a/k/a "Michael A. Welsh,"
a/k/a "Michael Paul S. Welsh," and
**CARROL ANTONIO JACKSON,**
a/k/a "Jack Jackson,"

did knowingly and willfully combine, conspire, confederate, and agree with each other and other persons known and unknown to the Grand Jury to commit mail fraud and wire fraud, that is, to devise and intend to devise a scheme and artifice to defraud individual victims, and to obtain money and property from these victims, by means of materially false and fraudulent pretenses,

representations, promises, and omissions (the "scheme to defraud"), and for the purpose of executing and attempting to execute the scheme to defraud did cause to be delivered by the United States Postal Service and by private and commercial interstate carrier according to the direction thereon any matter or thing, in violation of 18 U.S.C. § 1341, and did cause to be transmitted by means of wire communication, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

**Manner and Means of the Conspiracy and Scheme to Defraud**

9. It was part of the conspiracy and scheme to defraud that **JORDAN**, **WELSH**, and other persons known and unknown to the Grand Jury offered assistance, for a fee, to individuals who wanted to modify their mortgage loans and prevent foreclosure of their homes.

10. It was further part of the conspiracy and scheme to defraud that **JORDAN** and **WELSH** falsely told homeowners who wanted to modify their mortgage loans and prevent foreclosure of their homes that MJLAG could help these homeowners keep their homes.

11. It was further part of the conspiracy and scheme to defraud that **JORDAN** and **WELSH** falsely promised homeowners who wanted to modify their mortgage loans and prevent foreclosure of their homes that MJLAG could help these homeowners get "free and clear" title to their homes, such that the homeowners would not have any debt or liens against the property.

12. It was further part of the conspiracy and scheme to defraud that **JORDAN** and **WELSH** falsely told homeowners who wanted to modify their mortgage loans and prevent foreclosure of their homes that MJLAG could obtain money for the homeowners from the homeowners' lenders as a result of fraud and other illegal acts allegedly committed by the lenders, typically by suing the lenders.

3

13. It was further part of the conspiracy and scheme to defraud that **JORDAN** and **WELSH** advised homeowners who wanted to modify their mortgage loans and prevent foreclosure of their homes that these homeowners needed to purchase one or more "audits" of the homeowners' mortgage loans in order to uncover alleged fraud and other illegal acts committed by the lenders.

14. It was further part of the conspiracy and scheme to defraud that **JORDAN** and **WELSH** falsely told homeowners who wanted to modify their mortgage loans and prevent foreclosure of their homes that the homeowners could use the "audits" as evidence in lawsuits against the lenders and in negotiating for a loan modification.

15. It was further part of the conspiracy and scheme to defraud that **JORDAN** and **WELSH** caused homeowners who wanted to modify their mortgage loans and prevent foreclosure of their homes to become MJLAG clients by signing a "Contract Fee Agreement" that purported "to request a loan audit for one or more real property secured by a loan or ('Loans'), secured by property owned by Principal located at [property address] ('Property')."

16. It was further part of the conspiracy and scheme to defraud that the Contract Fee Agreement: (1) provided that, upon the execution of the agreement, the client agreed to pay MJLAG a fee; and (2) listed the specific amounts MJLAG charged clients for various services.

17. It was further part of the conspiracy and scheme to defraud that the Contract Fee Agreement contained the seal of the National Association of Mortgage Underwriters ("NAMU"), even though **JORDAN, WELSH, JACKSON**, MJLAG, and CJ Maxx had no current affiliation with NAMU.

18. It was further part of the conspiracy and scheme to defraud that **JORDAN** and **WELSH** caused clients to sign a "Confidentiality and Nondisclosure Agreement" with MJLAG,

which provided that the MJLAG client (referred to in the agreement as a "student") would "hold in confidence and refrain from disclosure the Confidential Information to any person or entity without the prior written consent of [MJLAG]," and a "Self Executing Contract for Unauthorized Disclosure" with MJLAG, which provided that, where an instance of intentional, unauthorized disclosure of MJLAG confidential information could be "unquestionably demonstrated," the client would be required to pay MJLAG $100,000 for each such instance.

19. It was further part of the conspiracy and scheme to defraud that, at **JORDAN's** direction, **JACKSON** prepared fraudulent documents purporting to be "Forensic Audit Reports" and "Real Estate Securitization Audits" relating to loans for properties owned by MJLAG clients.

20. It was further part of the conspiracy and scheme to defraud that **JORDAN** and **WELSH** paid **JACKSON** for these fraudulent "Forensic Audit Reports" and "Real Estate Securitization Audits."

21. It was further part of the conspiracy and scheme to defraud that **JORDAN** directed MJLAG clients to send to the clients' lenders, by mail, facsimile, and other means, requests that information about the clients' loans be sent to **JORDAN** and others.

22. It was further part of the conspiracy and scheme to defraud that **JORDAN** submitted, caused to be submitted, and advised MJLAG clients to submit, to federal and state agencies, by mail, facsimile, and other means, baseless complaints about the clients' lenders.

23. It was further part of the conspiracy and scheme to defraud that **JORDAN** advised MJLAG clients to stop paying the clients' mortgages.

24. It was further part of the conspiracy and scheme to defraud that **JORDAN** advised MJLAG clients whose homes already were in foreclosure proceedings to file for

bankruptcy in order to delay the foreclosure proceedings and as part of the process to prevent foreclosure of the clients' homes.

25. It was further part of the conspiracy and scheme to defraud that **JORDAN** assisted MJLAG clients in filing for bankruptcy, by preparing and causing others to prepare bankruptcy petitions and related documents and court filings.

26. It was further part of the conspiracy and scheme to defraud that **JORDAN**, **WELSH**, **JACKSON**, and other persons known and unknown to the Grand Jury used interstate wires (to wit, telephone calls, texts, and email messages) to communicate with MJLAG clients, each other, and other co-conspirators.

27. It was further part of the conspiracy and scheme to defraud that **JORDAN**, **WELSH**, and other persons known and unknown to the Grand Jury caused MJLAG clients to make payments to **JORDAN**, to companies controlled and operated by **JORDAN** and **WELSH**, and to other persons known and unknown to the Grand Jury.

28. It was further part of the conspiracy and scheme to defraud that **JORDAN** and **WELSH** opened bank accounts in the names of MJLAG at various financial institutions, into which accounts **JORDAN** and **WELSH** deposited money paid by victim homeowners and on which **JORDAN** and **WELSH** were signatories.

29. It was further part of the conspiracy and scheme to defraud that **JACKSON** opened bank accounts in the name of CJ Maxx at various financial institutions, into which accounts **JACKSON** deposited money paid by MJLAG and on which **JACKSON** was a signatory.

**Overt Acts**

30. In furtherance of the conspiracy, and to effect the objects thereof, **JORDAN**, **WELSH**, **JACKSON**, and other persons both known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

Individual 1

a. On or about October 13, 2012, **JORDAN** caused Individual 1 to enter into a "Contract Fee Agreement" with MJLAG to request an "audit" of a loan in Individual 1's name secured by property located in Annapolis, Maryland. According to the contract, Individual 1 agreed to pay $2,200 for the production and submission of "forensic" and "securitization" "audits."

b. On or about October 25, 2012, **JORDAN** caused Individual 1 to pay $675 for a "Forensic Audit" by check made payable to MJLAG.

c. On or about April 2, 2013, **JORDAN** sent an email message from mjloanauditorgroup@[xxx].com to Individual 1 stating, "I'm going to put a rush job for [Individual 1's name] securitization audit so you can hurry and fight for your home. They playing games. Thanks."

d. On or about May 8, 2013, **JACKSON** prepared a "Forensic Audit Report" of a loan in Individual 1's name secured by property in Annapolis, Maryland.

Individual 2

e. On or about June 25, 2013, **JORDAN** caused Individual 2 to pay $675 by check made payable to MJLAG. The check included the notation "Forensic (Full)."

   f. On or about July 22, 2013, **JORDAN** caused Individual 2 to pay $375 by check made payable to MJLAG. The check included the notation "Securitization."

   g. On or about June 18, 2013, **JORDAN** caused Individual 2 to send two letters about Individual 2's mortgage loan to the Whistleblower Office of the Internal Revenue Service, Department of the Treasury. The letters were addressed to Individual 2's lender and included baseless allegations of purported illegalities in connection with Individual 2's loan.

   <u>Individual 3</u>

   h. On or about July 1, 2013, **JORDAN** caused Individual 3 to enter into a "Contract Fee Agreement" with MJLAG to request an "audit" of a loan in Individual 3's name secured by property located in Springfield, Virginia. According to the contract, Individual 3 agreed to pay $3,100 for "Audit Services," including a "court ready audit," "Foreclosure Self Defense: Level 1," and an "Affidavit of Interest."

   i. On or about July 8, 2013, **JORDAN** caused the transmission of a facsimile in Individual 3's name from MJLAG, in Maryland, to Individual 3's loan servicer, in Texas, requesting that the loan servicer send to MJLAG by facsimile copies of Individual 3's loan application and good faith estimate. The facsimile included a Borrower's Authorization signed by Individual 3, in which Individual 3 authorized MJLAG to obtain the requested documents "to conduct a review, verify and Audit [Individual 3's] loan documents."

   j. On or about August 8, 2013, **JORDAN** caused the transmission of a facsimile in Individual 3's name from MJLAG, in Maryland, to Individual 3's loan servicer, in Texas, requesting that the loan servicer send to MJLAG by facsimile copies of Individual 3's loan application and good faith estimate. This facsimile also included a Borrower's

Authorization signed by Individual 3, in which Individual 3 authorized MJLAG to obtain the requested documents "to conduct a review, verify and Audit [Individual 3's] loan documents."

    k.    On or about September 13, 2013, **JACKSON** prepared a "Forensic Audit Report" for a loan in Individual 3's name secured by property in Springfield, Virginia.

    l.    On or about September 15, 2013, **JORDAN** caused Individual 3 to pay $350 to MJLAG. The receipt for this check included the notation "Forensic Audit."

    m.    In or about March 2014, **JACKSON** prepared a "Real Estate Securitization Audit" for a loan in Individual 3's name secured by property in Springfield, Virginia.

Individual 4

    n.    On or about March 12, 2015, **JORDAN** caused Individual 4 to enter into a "Contract Fee Agreement" with MJLAG to request an "audit" of a loan in Individual 4's name secured by property located in Vienna, Virginia. According to the contract, Individual 4 agreed to pay $4,700 for "Audit Services."

    o.    On or about March 26, 2015, **JACKSON** prepared a "Forensic Audit Report" of a loan in Individual 4's name secured by property in Vienna, Virginia.

    p.    On or about April 1, 2015, **JORDAN** caused Individual 4 to pay $400 by check made payable to MJLAG. The check included the notation "Forensic Audit."

    q.    On or about April 16, 2015, **JORDAN** caused Individual 4 to enter into a "Contract Fee Agreement" with MJLAG to request an "audit" of a loan in Individual 4's name secured by property located in Great Falls, Virginia. According to the contract, Individual 4 agreed to pay $3,000 for "Audit Services."

r. On or about April 16, 2015, **JORDAN** caused Individual 4 to mail a letter to Individual 4's loan servicing company requesting documents showing proof of tax payment, title insurance policy, and the promissory note, and asking questions about the secured party of the loan, trustees, and the investor.

s. On or about June 2, 2015, **JORDAN** caused Individual 4 to pay $341 by check made payable to MJLAG. The check included the notation "Audit sec audit." An accompanying receipt noted that this payment was for a "Securitization Audit."

Individual 5

t. On or about August 4, 2015, **JORDAN** and **WELSH** caused Individual 5 to enter into a "Contract Fee Agreement" with MJLAG to request an "audit" of a loan in Individual 5's name secured by property located in Capitol Heights, Maryland. According to the contract, Individual 5 agreed to pay $6,200 for "Audit Services."

u. On or about August 4, 2015, **JORDAN** and **WELSH** caused Individual 5 to enter into a "Confidentiality and Nondisclosure Agreement" with MJLAG. **JORDAN** signed this agreement for MJLAG, and **WELSH** signed as a witness.

v. On or about August 4, 2015, **JORDAN** and **WELSH** caused Individual 5 to enter into a "Self Executing Contract for Unauthorized Disclosure" with MJLAG. **JORDAN** signed this contract for MJLAG, and **WELSH** signed as a witness.

w. On or about August 4, 2015, **JORDAN** caused Individual 5 to mail a letter to Individual 5's mortgage holder in which Individual 5 asked the mortgage holder to cancel the escrow for taxes and insurance.

x. On or about August 19, 2015, **JACKSON** prepared a "Forensic Audit Report" of a loan in Individual 5's name secured by property in Capitol Heights, Maryland.

  y. On or about September 17, 2015, **JORDAN** caused Individual 5 to pay $100 to MJLAG toward the contract fee.

  z. On or about March 30, 2016, **JORDAN**, in Maryland, sent a text message through California to Individual 5, in Maryland, stating that MJLAG had ordered Individual 5's "securitization audit [and] continue[d] to make payments towards the securitization audit."

Individual 6

  aa. On or about December 4, 2015, **JORDAN**, in Maryland, sent a text message to **JACKSON**, in Georgia, asking "How much you charged for [Individual 6] sec audit as a rush[.] I have our attorney working his case."

  bb. On or about December 4, 2015, **JORDAN**, in Maryland, sent a text message to **JACKSON**, in Georgia, stating "We need a forensic audit."

  cc. On or about December 4, 2015, **JACKSON**, in Georgia, sent a text message to **JORDAN**, in Maryland, stating "1200 for rush audit [on] private 750 for rush on public."

Additional Communications Regarding "Forensic Audits"

  dd. On or about January 21, 2016, **JACKSON** sent an email message to **JORDAN**, asking, "when will you send payment for these two analysis/audits[?]"

18 U.S.C. § 1349

## COUNTS TWO THROUGH THREE
### (Mail Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 7 and 9 through 30 of Count One are incorporated here and constitute a scheme and artifice to defraud individual homeowners, as described in Paragraph 8 of Count One (the "scheme to defraud").

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**MICHELLE SYLETHIA JORDAN,**
a/k/a "Michelle Harris,"
a/k/a "Michelle Welsh,"

for the purpose of executing and attempting to execute the scheme to defraud, did knowingly deliver and cause to be delivered by the United States Postal Service and by private and commercial interstate carrier the following matters or things:

| Count | Mail Matter | Date |
|---|---|---|
| 2 | Letter from Individual 2 to the Whistleblower Office of the Internal Revenue Service, Department of the Treasury | June 18, 2013 |
| 3 | Letter from Individual 4 to Individual 4's loan servicing company | April 16, 2015 |

18 U.S.C. § 1341

## COUNTS FOUR THROUGH ELEVEN
(Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 7 and 9 through 30 of Count One are incorporated here and constitute a scheme and artifice to defraud individual homeowners, as described in Paragraph 8 of Count One (the "scheme to defraud").

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendants named below, for the purpose of executing and attempting to execute the scheme to defraud, knowingly transmitted or caused the transmission of the following wire communications in interstate and foreign commerce:

| Count | Defendant(s) | Wire Transmission | Date |
|---|---|---|---|
| 4 | MICHELLE SYLETHIA JORDAN | Email message from **JORDAN** using email account mjloanauditorgroup@[xxx].com to an email account used by Individual 1 | April 2, 2013 |
| 5 | MICHELLE SYLETHIA JORDAN | Facsimile from MJLAG in Maryland to Individual 3's loan servicer in Texas | July 8, 2013 |
| 6 | MICHELLE SYLETHIA JORDAN | Facsimile from MJLAG in Maryland to Individual 3's loan servicer in Texas | August 8, 2013 |
| 7 | MICHELLE SYLETHIA JORDAN | Text message from **JORDAN** in Maryland to **JACKSON** in Georgia | December 4, 2015 |

| Count | Defendant(s) | Wire Transmission | Date |
|---|---|---|---|
| 8 | MICHELLE SYLETHIA JORDAN | Text message from **JORDAN** in Maryland to **JACKSON** in Georgia | December 4, 2015 |
| 9 | CARROL ANTONIO JACKSON | Text message from **JACKSON** in Georgia to **JORDAN** in Maryland | December 4, 2015 |
| 10 | CARROL ANTONIO JACKSON | Email message from **JACKSON** using email account jacmuv@[xxxxx].com to email account mjloanauditorgroup@[xxx].com used by **JORDAN** | January 21, 2016 |
| 11 | MICHELLE SYLETHIA JORDAN | Text message from **JORDAN** in Maryland transmitted through California to Individual 5 in Maryland | March 30, 2016 |

18 U.S.C. § 1343

## FORFEITURE ALLEGATIONS

The Grand Jury for the District of Maryland further finds that:

1.Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18 United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c), in the event of the defendants' convictions on Counts One through Eleven of the Indictment.

2.As a result of the offenses set forth in Counts One through Eleven, the defendants,

**MICHELLE SYLETHIA JORDAN,**
a/k/a "Michelle Harris,"
a/k/a "Michelle Welsh,"
**MICHAEL PAUL ANTHONY WELSH,**
a/k/a "Michael A. Welsh,"
a/k/a "Michael Paul S. Welsh," and
**CARROL ANTONIO JACKSON,**
a/k/a "Jack Jackson,"

shall forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to such violations, and all interest and proceeds traceable thereto.

### Substitute Assets

3.If, as a result of any act or omission of the defendants, any such property subject to forfeiture:

a.cannot be located upon the exercise of due diligence;

b.has been transferred or sold to, or deposited with, a third person;

c.has been placed beyond the jurisdiction of the Court;

d.has been substantially diminished in value; or

15

    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853
28 U.S.C. § 2461(c)

                       *Rod J. Rosenstein /KD*
                       Rod J. Rosenstein
                       United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**      Date: 2-6-17

Foreperson